# JOHN J. McLEAN
## v.
# THE COUNTY OF MONTGOMERY.

*Clerks—Compensation of—Fees in Criminal Cases—Power of County Board—Estoppel—Evidence.*

1.   Where a circuit clerk has actually collected as fees of his office a sum equal to or greater than his salary, but has out of such sum paid deputy hire and other necessary expenses of his office, so that the amount unexpended is not sufficient to pay his salary, the county board has no power under the statute to allow him fees in criminal cases sufficient to make up the balance of his salary.

2.   Where a county board has audited and allowed the payments made by a clerk for deputy hire and other expenses of the office, thereby reducing the sum actually collected by the clerk as fees below the amount necessary to pay his salary, and afterward, contrary to the statute, allowed him fees in criminal cases to make up the deficiency, the county is not estopped from recovering from the clerk such illegal allowance.

[Opinion filed November 23, 1889.]

APPEAL from the Circuit Court of Montgomery County; the Hon. J. J. PHILLIPS, Judge, presiding

This was an action in assumpsit brought by the county of Montgomery against John J. McLean to recover from him certain moneys paid to him from the county treasury of Montgomery county, Illinois, on county warrants, drawn on the treasurer of said county, by order of the board of supervisors.

These orders were drawn on the treasurer in payment of fees in criminal cases during McLean's term of office as circuit clerk, and were only for such fees as could not be collected from the defendants on their conviction, and where the defendants were acquitted and discharged without the payment of costs.   In no case did the amount paid appellant exceed the amount that was due him.

The case was tried by the court without the intervention of a jury.   The declaration contained the common counts only. The plea of non-assumpsit was filed, and with it the stipulation that under it appellant might prove any matter of defense which he could offer and prove under any special plea or pleas which could be properly pleaded in the case.

The court below entered judgment against appellant for $1,507.72, and this appeal was taken.

Messrs. LANE & COOPER and AMOS MILLER, for appellant.

The reports having been duly audited and approved by the county board, all the items charged in them for expense are proper items for which appellant took credit.

These items were within the discretion of the county board to allow.   Their action will not be reviewed.   Boyle v. Levi, 73 Ill. 175; Thielmann v. Burg, 73 Ill. 293; Hull v. Supervisors, 19 Johns. 260.

We insist that the determination of the board of super- visors in auditing and approving the reports of appellant and allowing the claims which this suit is brought to recover, is conclusive upon the county.   It was paid voluntarily to appel- lant upon his claim that it was right.   There was no mistake as to any fact about the claim.   If there was a mistake it was a mistake of law and not of fact; and it is fully settled that proof of a mistake of law will not enable the party to recover back money which has been voluntarily paid under a claim of right.   Supervisors of Chenango v. Birdsall, 4 Wend. 453; Supervisors of Onondago v. Briggs, 2 Denio, 26; Clarke v. Dutcher, 9 Cow. 674; Mowatt v. Wright, 1 Wend. 355; Bilbie v. Lumley, 2 East, 469; 1 Story's Equity Jurisprudence, Sec. 111 *et seq.*, notes; Broadwell v. Broadwell, 1 Gilm. 604; Shafer v. Davis, 13 Ill. 395; Campbell v. Carter, 14 Ill. 291; Sibert v. McAvoy, 15 Ill. 109; Falls v. Cairo, 58 Ill. 403.

Messrs. J. M. TRUITT and GEORGE PEPPERDINE, for appel- lee.

Under the rule announced by the Appellate Court in the case of The County of Crawford v. Lindsay, 11 Ill. App. 261, and the Supreme Court in the case of The County of Marion v. Lear, 108 Ill. 343, there can be no question that this case presents such a state of facts as would have prevented appel- lant from collecting one dollar of the sum in question from the county had the county board performed its duty and refused to make the payments admitted by appellant to have been made by the county.

Counsel say:  "We insist that the determination of the board of supervisors in auditing and approving the reports of appellant and allowing the claims which this suit is brought to recover is conclusive upon the county."   That presents in a single sentence the question which is in issue here.   They rely upon an estoppel.   But whatever may be the rule in other States, the prevailing and better rule, and especially in this State, is that the unlawful act of the board of supervisors can not and does not bind the county.   In all matters of judg- ment and discretion coming within the jurisdiction conferred upon the board by law, the action of the board of supervisors

must be held binding; but whenever the board acts beyond the jurisdiction conferred upon it by law, its action is *ultra vires* and is null and void. See Cumberland County v. Edwards, 76 Ill. 544; Crawford County v. Lindsay, *supra;* Jennings v. Fayette County, 97 Ill. 419; Manley v. City of Atchison, 9 Kas. 358; People, etc., v. Fields, 58 N. Y. 491; U. S. v. Bartlett, Davies, 9; Stevenson v. Mortimer, Cowp. 805; Taylor v. Plumer, 3 M. & S. 562; The Board of Supervisors, etc., v. Ellis, 59 N. Y. 620; The People, etc., v. The Board of Supervisors, 67 N. Y. 109.

CONGER, J. On the trial of this case it was agreed and stipulated by the parties that the defendant might, under the general issue, prove any matter of defense which he could offer and prove under any special plea which could be properly pleaded in the cause.

Appellant admitted he was circuit clerk and *ex officio* recorder from the first Monday in December, 1880, to first Monday in December, 1884, and was re-elected his own successor and held the office until first Monday in December, 1888.

It was further admitted by appellant that while he was such clerk he was paid from the county treasury of Montgomery county, Illinois, on county warrants or orders, duly drawn on the treasurer of said county by order of the board of supervisors, in amounts and at dates as follows, which amounts were for fees previously earned and reported by the defendant, as such clerk, in criminal cases where the costs could not be collected from the defendants on their conviction, and in cases in which the defendants were acquitted or otherwise legally discharged without payment of costs, to wit:

| | | |
|---|---|---|
| 1881. | December 8 | $151.92 |
| 1882. | December 13 | 389.45 |
| 1884. | August 5 | 742.80 |
| 1885. | April 2 | 371.60 |
| 1885. | September 21 | 53.35 |
| 1885. | December 18 | 101.10 |
| 1886. | December 13 | 145.00 |
| 1887. | September 17 | 152.90 |
| 1886. | August 17 | 228.30 |

McLean v. County of Montgomery.

It was then agreed by the parties that said sums were paid appellant at the said dates to make up a deficiency in his salary, deputy hire and other necessary expenses of his office which had not been fully paid at the time said sums were paid to him, the deficiency being equal to or greater than the amount then paid; and that at the time each of said payments was made, appellant, as such clerk, had collected, of fees earned by him as such clerk, a greater sum than was necessary to pay his salary up to date of each payment.

It was further admitted that in 1888 appellant was paid from the county treasury, on warrant drawn by order of the board of supervisors, $100, to pay William Burns to bring up certain records not completed by his predecessor, and that after said Burns had performed said services he was paid for the same by a county order drawn in his favor.

Resolution of board of supervisors fixing salary of appellant at $1,500 per annum for first term, and a second resolution fixing salary of appellant at same amount for second term; that subjoined to each of said resolutions is a further resolution providing that at the semi-annual settlement with appellant the county board will allow him such reasonable and necessary expenses as they may deem proper and actually paid for deputy hire in his office, other than what he can perform himself, and other necessary expenses contemplated by law, he to render an account of same under oath, supported by vouchers, to be paid out of fees of his office actually collected.    Each and every one of the semi-annual reports of appellant, during both terms of his office, was introduced in evidence.

It was agreed that said reports of appellant show that his earnings for his first term of office aggregate the sum of $15,533.43, and that of said earnings he collected the sum of $11,171.67.    That his earnings for his second term (not including court fees of November term, 1888), aggregate the sum of $13,397.80, and that of said earnings he collected the sum of $10,860.    It was agreed that said reports show that the expenses of the office during first term for clerk hire, stationery and other miscellaneous expenses aggregate the sum

of $6,784.65, and for second term, for like expenses, $6,838.30.

It was further agreed that in the items of miscellaneous expenses set out in said reports, there were items for postage stamps, postal cards, towels, washing towels and soap, the larger amount thereof being for postage stamps and postal cards; for first term amount to $366, second term, $378.90.

It was then agreed that the appellant filed his semi-annual reports during said two terms at the times and dates required by law, and that each report was duly examined and approved by the county board of said county, as required by law, and that in the report of the appellant, of December, 1881, there was shown to be due appellant, for preceding half year, $151.92; and in report of December, 1882, there was shown to be due appellant, on settlement, the sum of $389.45; and in report of December, 1883, due appellant, on settlement, $271.30; report of June, 1884, due appellant, as shown in report, $471.50; in report of December, 1884, due appellant as shown in report, $526.07; and that in subsequent reports made by appellant, including report of December, 1887, said reports show there was due appellant on settlements with the county board, as follows:

| | | |
|---|---|---|
| 1885. | June | $190.87 |
| 1885. | December | 498.14 |
| 1886. | June | 589.46 |
| 1886. | December | 828.46 |
| 1887. | June | 748.96 |
| 1887. | December | 604.46 |

Appellant testified in his own behalf, as follows: "I paid my deputies weekly, during both terms, out of the fees of the office that had been collected; when I did not collect enough fees to pay my deputies, I paid them out of my own money. The miscellaneous expenses were paid from time to time, just as the expenses were made. Whatever deficiency there was of fees collected to pay deputy hire and other necessary expenses and my salary, was always on my salary. All of the items of expense were necessary in running the office. I took receipts of my deputies for the money I paid them.

McLean v. County of Montgomery.

The deputies I had in the office were necessary to keep up the work of the office.   The amounts I paid them, as shown in my reports, were reasonable for the services they rendered in the office.

The items charged for miscellaneous expenses are made up of express charges, stationery, telegrams by order of court, postage stamps, towels, soap, washstand, and the sprinkling of street at the south front of the office.   All these items were necessary expenses of the office.   The washstand was bought after consulting with the member of the public buildings committee of the board of supervisors, who agreed I should buy it for use in the office.   The washstand, soap and towels were used in the office after handling the books, which were usually covered with more or less dust and dirt, making it necessary to wash before writing on white paper, otherwise the books and papers would have been soiled.   The sprinkling was paid for after consulting the same committee who agreed that it was a proper expense; in the summer season the prevailing winds are from the south, and blow and sweep dust up Main street into the office windows which front south on Main street, covering the books, papers and office furniture with dust.   The sprinkling prevented much of the dust from blowing in on the books and office furniture.

The postage stamps were used in answering correspondence in connection with the business of the office; a great many letters of inquiry by witnesses, suitors, lawyers and others came to the office requiring answers and were answered, and a great many deeds and other instruments were filed with the request when recorded to be returned by mail to the parties filing the same for record; this, of course, required a great many postage stamps and cards, which were bought by me or some one of my deputies, as needed, and charged up and paid for as expense of the office.   Occasionally I might have used a stamp on my private correspondence; I, however, had but very little private correspondence, only an occasional letter to a friend.   I had no private business while I was clerk that required any correspondence;" which was all the evidence offered by either party.

From an examination of the facts which were agreed to, and which fully appear in the statement, it will appear that there are two questions of law arising upon this record.

First. Where a clerk has actually collected as fees of his office a sum equal to or greater than his salary, but has out of such sum paid deputy hire and other necessary expenses of his office so that the amount unexpended is not sufficient to pay his salary, can the county board legally allow him fees in criminal cases sufficient to make up the balance of his salary under Sec. 15 of Chap. 53, which is as follows:

"In all criminal cases, when the costs can not be collected from the defendants, on their conviction, or when the defendants shall be acquitted, such costs shall be paid from the county treasury; provided, that no such fees shall be paid to said clerk from the county treasury when the fees collected by him during such years shall equal the compensation or salary allowed him by the board of supervisors; and provided further, that no more of such fees shall, in any case, be paid from the county treasury than shall be sufficient, with the fees collected, to make the compensation or salary of said clerk."

We are clearly of opinion that under this section the county board has no legal right to make such an allowance. If the amount of fees actually collected equal or exceed the salary the board would be powerless to make the allowance contended for.

As said in Marion Co. v. Lear. 108 Ill. 351, "He, (appellant) must show a deficiency in the payment of his "salary," *i. e.*, personal compensation—after applying to the payment thereof all the fees collected by him from other sources, before he can require the county to pay those fees in criminal cases, and then it can only be required to do so to the extent of such deficiency." Crawford Co. v. Lindsay, 11 Ill. App. 261.

It may be, as contended by appellant, that where the fees actually collected are in part used to pay the necessary and proper expenses of the office, thus leaving the salary unpaid in part, it would be but just that such deficiency should in some

way be made up by the county, but in view of the plain and unequivocal language of the 15th section, and the construction given it by the Supreme Court, it can not be done as contended for by appellant.

Second.   Where a county board has audited and allowed the payments made by a clerk for deputy hire and other expenses of the office, thereby reducing the sum actually collected by the clerk, as fees, below the amount necessary to pay his salary, and afterward in violation of the provisions of Sec. 15 allow him fees, in criminal cases, sufficient to make up his salary, is the county estopped from recovering from such clerk such illegal allowance ?

We think not.   When a county board attempts to make an allowance not authorized by law, it is acting without jurisdiction, entirely beyond its power, and its acts are utterly void and do not bind the county.   The board is the agent of the county, and when allowing a claim against it over which it has jurisdiction, and the amount to be paid is discretionary, the conclusion reached would no doubt be binding upon the county; but when the board seeks to appropriate funds in the treasury in direct contravention of the statute it exceeds its powers, and in no sense does it estop the county from ignoring and repudiating such action.   Cumberland Co. v. Edwards, 76 Ill. 544; Jennings v. Fayette Co., 97 Ill. 419.   The holding of the Circuit Court being in harmony with these views, we think the judgment was right and it will therefore be affirmed.

*Judgment affirmed.*